**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*,<br><br>      Movants/Defendants,<br><br>      v.<br><br>AMERICAN BAR ASSOCIATION<br><br>IN RE THIRD PARTY SUBPOENAS | Case No.:<br><br>Case Pending in the U.S. District Court for the District of Columbia: *American Bar Association v. Executive Office of the President, et al.*, Civ. A. No. 25-1888 (AHA) (D.D.C.) |

**DEFENDANTS' NOTICE OF MOTION TO
QUASH SUBPOENA OR FOR PROTECTIVE ORDER**

PLEASE TAKE NOTICE that Defendants in the case *American Bar Association v. Executive Office of the President*, Civ. A. No. 25-1888 (AHA) (D.D.C.), hereby move pursuant to Federal Rules of Civil Procedure 26 and 45 to quash the American Bar Association's document and deposition subpoenas on Mr. Boris Epshteyn, issued in the above-referenced case or to issue a protective order precluding the deposition and document production. The motion is based on the attached memorandum in support, exhibit thereto, and the record in the case.

Dated: July 2, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

DIANE KELLEHER
Director, Federal Programs Branch

CHRISTOPHER M. LYNCH
Chief Litigation Counsel

/s/ *M. Jared Littman*
M. JARED LITTMAN
JAMES J. WEN
ADAM S. FOX
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005
Jared.littman2@usdoj.gov
James.J.Wen@usdoj.gov
Adam.S.Fox@usdoj.gov

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| EXECUTIVE OFFICE OF THE PRESIDENT and UNITED STATES OF AMERICA | ) ) ) ) | Case No.: 26-MC-333 |
| Movants, | ) ) | Case Pending in the U.S. District Court for the District of Columbia: |
| v. | ) ) | *American Bar Association v. Executive Office of the President, et al.*, Civ. A. No. 25-1888 (AHA) (D.D.C.) |
| AMERICAN BAR ASSOCIATION | ) ) | |
| IN RE THIRD PARTY SUBPOENAS | ) ) ) ) | |

**DEFENDANTS' MOTION TO
QUASH SUBPOENAS AND FOR PROTECTIVE ORDER**

**TABLE OF CONTENTS**

BACKGROUND ....................................................................................................................................2

LEGAL STANDARD .........................................................................................................................4

I.     Communications Plaintiff Seeks Are Covered By The Presidential Communications
       Privilege ..................................................................................................................................5

II.    Rule 408 Independently Protects Communications Concerning Agreements And Potential
       Settlements ..............................................................................................................................8

III.   Discovery is Just Underway, and Jumping Straight to the Collection of Records from and the
       Deposition of an Alleged Presidential Adviser Is Premature .......................................10

CONCLUSION..................................................................................................................................12

Movants/Defendants Executive Office of the President ("EOP") and United States of America file this Motion pursuant to Federal Rules of Civil Procedure 26(c) and 45(d) in response to Plaintiff's notice of intent to serve subpoenas, which are intentionally designed to impermissibly invade the privileges afforded to the President of the United States.[1]  On June 16, 2025, Plaintiff the American Bar Association ("ABA") brought suit against EOP, the United States, and 29 agencies and their agency heads, improperly seeking to prospectively prevent the issuance or implementation of future Executive Orders against ABA members.  *See Am. Bar Ass'n v. Exec. Off. of the President*, Civ. A. No. 25-1888 (AHA) (D.D.C.).  Before the district court even entered a discovery scheduling order, Plaintiff rushed to issue subpoenas to a third party who Plaintiff believes and knows provided the President with privileged and confidential advice in connection with the Executive Orders at issue. Plaintiff cannot be permitted to end-run around sacrosanct privileges by seeking the same type of documents and testimony from a third party that it would be barred from seeking directly from the President and the EOP.[2]

The President cannot be compelled to divulge even the identity of any individual from whom he receives confidential advice.  Accordingly, for purposes of this Motion, Defendants can neither confirm nor deny whether the President even received advice from any third party regarding the Executive Orders.  Even without making that disclosure, it is clear from the face of the subpoenas that Plaintiff is seeking documents and information that would necessarily implicate the presidential communications privilege to the extent such documents and information exist.  Further, if there were

---

[1]    The June 2, 2026 notice of subpoena to Boris Epshteyn identifies both a subpoena for production of documents with a return date of July 2, 2026 and a subpoena for testimony calling for testimony on Sunday July 12, 2026 in Plaintiff's counsel's New York offices.  Ex. 1 (subpoenas).

[2]    This motion is being filed by defendants to the D.D.C. matter and without prejudice to the third party.

communications between the third party, who is an attorney, and the President, who is that attorney's client, which is neither confirmed nor denied here, such communications would be completely and totally protected by the oldest privilege known in law: the attorney-client privilege.

Further, the subpoenas are premature since they purport to seek documents and information from a third party that Plaintiff believes provided the President with advice.  Such discovery may not proceed unless the party seeking the discovery can make a showing that the person possesses directly relevant information to this lawsuit, which is not about previous Executive Orders but is about hypothetical future Executive Orders, that cannot be obtained from other sources.  In this case, discovery has only just started, and requiring testimony and documents from the third party ahead of all other sources is the inverse of what is required to take discovery of someone believed, and widely known, to be a an adviser and attorney to the President.  The Supreme Court's ruling in *Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367, 384 (2004), requires that that any such discovery, if permissible at all, must await the end of the discovery process when Plaintiff has exhausted other avenues of seeking information relevant to its claims.  Moreover, the third party from whom information is sought has no relationship or bearing to some future, hypothetical Executive Orders that may or may not come to fruition, which only further highlights the impermissible nature of the discovery at issue, and the wrongful, potential violations of the executive,  attorney – client, or any other privileges.

## BACKGROUND

The background for this matter is set forth in Defendants' motion to dismiss (ECF No. 22-1), which the district court denied on March 31, 2026 (ECF No. 43).[3]  Plaintiff's Complaint puts the President at the center of a series of actions focused on law firms.  *See, e.g.*, Compl. ¶ 4 (ECF No. 1)

---

[3]    ECF filings referenced in this motion are associated with the underlying D.D.C. case, *Am. Bar Ass'n v. Exec. Off. of the President*, Civ. A. No. 25-1888 (AHA).

("President Trump has used the vast powers of the Executive Branch to coerce lawyers and law firms to abandon clients, causes, and policy positions the President does not like."). Plaintiff posits that the President is carrying out a "Law Firm Intimidation Policy . . . through a series of materially identical executive orders designed to severely damage particular law firms" and through strong-arm deals with other law firms that wished to avoid being the next subject of a similar executive order. *Id.* ¶ 4. As part of its relief, the ABA asks the Court to declare this alleged Policy to be unconstitutional and to enjoin the issuance or implementation of EOs like the ones issued in the spring of 2025. *Id.* ¶¶ 22, 269–77.[4]

On June 2, 2026, Plaintiff served upon Defendants a notice of intent to issue subpoenas to the third party, and on June 4, 2026, the district court entered a scheduling order for discovery in this matter. *See* ECF No. 37. Most recently, the district court entered a briefing schedule on Defendants' *Cheney* objections to Plaintiff's request for production as to Defendants, by minute order dated June 25, 2026.

The June 2 notice included two subpoenas. One subpoena demanded the third party produce documents by July 2, and the other commanded his attendance at a deposition in New York City, ten days later on Sunday, July 12. *See* Ex. A. The subpoena for documents seeks to compel the third party to produce documents responsive to the following requests:

> RFP 1: All communications on or after January 20, 2026 You sent to, received from, or participated in with [14 law firms].

> RFP 2: All Communications on or after January 20, 2025 relating to any possible issuance of any Executive Order against any law firm, including Communications with the Administration and with President Donald J. Trump.

---

[4]    Challenges by individual law firms to some of these EOs are currently pending before the U.S. Court of Appeals for the District of Columbia. *See* Nos. 25-5241, 25-5265, 25-5277, 25-5310 (D.C. Cir.).

RFP 3: All Communications on or after January 20, 2025 reflecting or relating to any Agreement(s), including any negotiations relating to any Agreements, and any Communications implementation, enforcement, monitoring, or [sic]

RFP 4: All Communications on or after January 20, 2025 relating to any Law Firm Order.

RFP 5: Social media posts, and any direct messages, discussing or relating to any Law Firm Order or Agreement.

## LEGAL STANDARD

A party claiming a privilege regarding documents sought in civil discovery may seek to quash a subpoena under Federal Rule of Civil Procedure 45(d).  *See*, 9A Wright & Miller's Federal Practice & Procedure § 2459 Subpoena for the Production of Documents and Things—Quashing or Modifying a Subpoena (3d ed.) (party has standing to seek to quash a subpoena issued to someone who is not a party, when "the objecting party claims some personal right or privilege with regard to the documents sought.").  Motions to quash must be "timely," which "[c]ourts have interpreted . . . to mean the motion must be made before compliance with the subpoena is required."  *Id.* § 2463.1.  Defendants thus file this motion on the same day that Plaintiff demanded documentary compliance from the third party.

A court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery[]" and "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters[.]"  Fed. R. Civ. P. 26(c)(1).  "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required."  *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984); *see also, e.g.*, *Ampong v. Costco Wholesale Corp.*, 550 F. Supp. 3d 136, 139 (S.D.N.Y. 2021).

Under Rule 45, a court "*must* quash or modify a subpoena that: . . . requires disclosure of privileged or other protected matter [or] subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A) (emphasis added). While the burden of establishing that a subpoena must be quashed

4

typically falls on the movant, that burden is reversed where a party seeks deposition testimony of a high-level government official, which applies here, as the highest level government official, the Chief Executive of the United States, is the holder of the privileges at hand and cover all information sought by Plaintiff from the third party.  *See, e.g.*, *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) ("We now hold that, to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition[.]"); *In re United States (Bernanke)*, 542 F. App'x 944, 948 (Fed. Cir. 2013) (stating that party seeking such testimony bears burden of proving extraordinary circumstances "even in cases . . . in which the government is a movant[]"); *In re United States (Holder),* 197 F.3d 310, 316 (8th Cir. 1999) ("Lee has not established extraordinary circumstances requiring the discovery sought from Attorney General Reno and Deputy Attorney General Holder."). By seeking a deposition from someone believed, and widely known, to be an adviser and attorney to the President, forcing him to testify into "the reasons for . . . official action," *Lederman*, 731 F.3d at 203, Plaintiff must satisfy this same heightened burden.

### I.    Communications Plaintiff Seeks Are Covered By The Presidential Communications Privilege

Any communications that the third party may or may not have had with the President, or his close advisers, sought in Plaintiff's request for production, would be privileged.  The third party's status as a non-government employee does not displace the protections of the presidential communications privilege.  Presidents have long consulted private citizens for their advice on presidential actions.  *See, e.g.*, *In re Sealed Case*, 121 F.3d 729, 750 (D.C. Cir. 1997) (recognizing that President and his advisers "obtain input from all others with significant expertise"); *Ass'n of Am. Physicians & Surgeons, Inc.*, 997 F.2d at 908–09 ("Presidents have created advisory groups composed of private citizens (sometimes in conjunction with government officials) to meet periodically and advise them (hence the phrase 'kitchen cabinets') on matters such as the conduct of a war.").  Against this tradition, courts have long recognized that such advice—including the identity of its sources—is

5

privileged.  *See, e.g.*, *In re Sealed Case*, 121 F.3d at 750–51 (presidential communications privilege extends to presidential advisers' "sources of information" to facilitate "access to candid and informed advice"); *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 908 (D.C. Cir. 1993) ("Application of FACA to the Task Force clearly would interfere with the President's capacity to solicit direct advice on *any* subject related to his duties from a group of private citizens, separate from or together with his closest governmental associates."); *Assertion of Exec. Privilege Concerning the Dismissal and Replacement of U.S. Att'ys*, 31 Op. O.L.C. 1, 5 (2007) (asserting executive privilege over communications with "individuals outside the Executive Branch, including with individuals in the Legislative Branch").

The presidential communications privilege has to apply for at least two reasons.  First, revealing the identity of whom the President consults with could provide insight into the nature of the advice solicited and received, thereby impermissibly limiting the President's ability to carry out his vital duties.  *See, e.g.*, *Jud. Watch, Inc. v. U.S. Secret Serv.*, 726 F.3d 208, 217 (D.C. Cir. 2013) (Garland, C.J.) (construing FOIA to exempt White House visitor logs "to avoid the significant separation-of-powers concerns that would arise if the Act were construed in a way that effectively permitted requesters to reconstruct" White House visitors and meetings); *Prop. of the People, Inc. v. Off. of Mgmt. & Budget*, 394 F. Supp. 3d 39, 47 (D.D.C. 2019) (access to White House calendars "would raise separation-of-powers concerns because it would threaten the ability of the President and his closest advisers to hold meetings and seek advice in confidence"); *see also Trump v. United States*, 603 U.S. 593, 612–13 (2024) ("Because the President's 'need for complete candor and objectivity from advisers calls for great deference from the courts,' we held that a 'presumptive privilege' protects Presidential communications" which "'relates to the effective discharge of a President's powers'" which the Court "deemed . . . 'fundamental to the operation of Government and inextricably rooted in the separation of powers under the Constitution.'" (citations omitted)).

Second, revealing the identity of whom the President consulted, or the content of any such consultations, could chill participation in future deliberations, undermining the President's access to the best advice, therefore undermining the quality of presidential decision-making and ability to carry out the duties of the presidency without interference. *See id.* at 611 (noting the Court has "recognized Presidential immunities and privileges 'rooted in the constitutional tradition of the separation of powers and supported by our history'" because of "'the greatest public interest' in providing the President with "'the maximum ability to deal fearlessly and impartially with" the duties of his office'" and "the 'unique risks to the effective functioning of government' that arise when the President's energies are diverted by proceedings that might render him 'unduly cautious in the discharge of his official duties'" (citations omitted)).  As the D.C. Circuit recognized in its seminal decision on the privilege, "[w]ithout protection for her sources of information, an adviser may be tempted to forgo obtaining comprehensive briefings or initiating deep and intense probing for fear of losing deniability." *In re Sealed Case*, 121 F.3d at 751.  After all, "[h]uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances and for their own interests to the detriment of the decisionmaking process." *United States v. Nixon*, 418 U.S. 683, 705 (1974).  It is therefore critical that the privilege protect not only the underlying communications, but also the adviser's identity.

Here, Plaintiff's subpoenas center on whether and to what extent the third party and the President discussed any law firms and related Executive Orders, and any documents reflecting such communications.  The "separation of powers concerns are no less palpable here simply because the subpoenas were issued to third parties." *Trump v. Mazars USA, LLP*, 591 U.S. 848, 868 (2020); *cf. United States v. Am. Tel. & Tel. Co.*, 551 F.2d 384, 390–91 (D.C. Cir. 1976).  Because the privilege exists to "provide sufficient elbow room for advisers to obtain information from *all knowledgeable sources*, the privilege must apply both to communications which these advisers solicited and received from others

7

as well as those they authored themselves." *In re Sealed Case*, 121 F.3d at 752 (emphasis added). To the extent the third party may have been involved in discussions about whether or how to issue Executive Orders related to law firms, or how to interact with law firms as to which Executive Orders may be issued, or any similar such discussions, those discussions would have been in service of advising the President in the exercise of his official authority. Only the President can issue Executive Orders, and, even in the ABA's wrongful theory of the case, the President is the one supposedly directing this alleged campaign "to coerce lawyers and law firms to abandon clients, causes, and policy positions [he] does not like." Compl. ¶ 4. Seeking documents from the third party on the topic of "any possible issuance of any Executive Order against any law firm" (RFP 2) necessarily and wrongly implicates communications the third party might have had with the President or his advisers. *Cf. Ass'n of Am. Physicians & Surgeons, Inc.*, 997 F.2d at 909 (explaining "constitutional problems" arising from the disclosure of information from those in "operational proximity to the President himself"). So too for a request for documents related to any "Settlements" with law firms (RFP 3)[5] or any "Law Firm Order" (RFP 4),[6] which seeks the third party's communications with the President and his advisers regarding the President's exercise of official authority, and also appears to be the primary subject of the proposed deposition.

---

[5]     RFP Instruction 6 defines "Settlement" as to include "the Administration and the Settling Firms in which any firm made an admission, representation, promise, or commitment to avoid or minimize the possibility that *either the Administration would issue an executive order* against the Settling Firm or that the United States Equal Employment Opportunity Commission ("EEOC") would open an investigation into whether the Settling Firm's employment practices violate Title VII of the Civil Rights Act of 1964 . . ." (emphasis added).

[6]     Subpoena Instruction 17 defines this term to include the following Executive Orders issued by President Trump: Exec. Order No. 14,230, 90 Fed. Reg. 11781 (Mar. 6, 2025) "Addressing Risks from Perkins Coie LLP;"; Exec. Order No. 14,237, 90 Fed. Reg. 13029 (Mar. 14, 2025) "Addressing Risks From Paul Weiss;" Exec. No. Order 14,246, 90 Fed. Reg. 13997 (Mar. 25, 2025) "Addressing Risks From Jenner & Block;" Exec. Order No. 14,250, 90 Fed. Reg. 14549 (Mar. 27, 2025) "Addressing Risks From WilmerHale;" and Exec. Order No. 14,263, 90 Fed. Reg. 15615 (Apr. 9, 2025) "Addressing Risks from Susman Godfrey."

While conversations between the President and any third party in furtherance of official presidential decisionmaking would be subject to executive privilege, other defenses and privileges may also apply to presidential communications, separate and apart from executive privilege.  For example, records of communications that do not touch on the Executive Orders would be non-responsive to the subpoenas.  *See, e.g.*, RFP 2.  Similarly, to the extent that a third party was a lawyer and had an attorney-client relationship with the President, that would provide a separate basis for withholding any communications properly subject to that attorney-client privilege.  *See, e.g.*, *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) ("The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice.").  Indeed, the attorney-client privilege would provide a narrower basis for withholding all such presidential communications, without the need to resort to executive privilege.

## II.     Rule 408 Independently Protects Communications Concerning Agreements And Potential Settlements

Plaintiff's subpoena also improperly seeks records concerning "negotiations relating to any Agreements" and related communications with named law firms.  Ex. A, at 19.  But under Federal Rule of Evidence 408, "conduct or a statement made during compromise negotiations about the claim" is "not admissible" as evidence "to prove or disprove the validity . . . of a disputed claim."  Fed. R. Evid. 408(a).  This rule "is meant to promote settlements."  *United States v. Davis*, 596 F.3d 852, 859 (D.C. Cir. 2010).  "Offers to settle are excluded even if no settlement negotiations follow."  *Id.*  It also applies to "statements made in compromise negotiations."  *Id.* (quoting Fed. R. Evid. 408(a)(2)).  To the extent that Plaintiff seeks communications concerning "negotiations relating to any Agreements," that request runs up against Rule 408.  Rule 408 evidence is not discoverable here because it is disproportionate to the needs of the case (particularly at this time), namely because this case is not about previous Executive Orders but is about hypothetical future Executive Orders, and because

9

Plaintiffs  have not explained how such negotiations will lead to the discovery of admissible, non-privileged evidence.  *See* Fed. R. Civ. P. 26(b).

### III.    Discovery is Just Underway, and Jumping Straight to the Collection of Records from and the Deposition of an Alleged Presidential Adviser Is Premature

Moreover, since discovery in this case is just beginning, there is no way for Plaintiff to meet the standards for obtaining such information from a third-party who they believe to be, and is widely known to be, an adviser and counsel to the President.  Ordinarily, when high-ranking officials are targeted in a discovery dispute, they are "generally not subject to depositions unless they have *some* personal knowledge about the matter and the party seeking the deposition makes a showing that the information cannot be obtained elsewhere." *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 1, 4 (D.D.C. 1998) (collecting cases); *see also Lederman*, 731 F.3d at 203 ("We now hold that, to depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition—for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means.").  So too here for the third party, whose alleged status as a private adviser and counsel to the President explains why Plaintiff has sent him these subpoenas in the first place.  Without attendant protections for any such discussions, advisers may decline to serve in these roles or modify their advice out of a concern for how they will be perceived publicly.  *See Nixon*, 418 U.S at 705 (1974).[7]

To obtain discovery from such persons, if that were at all possible, which is not the case here, a plaintiff would need to *first* exhaust alternative sources of non-privileged discovery and—having done so—*then* demonstrate that the requests are limited to personal knowledge that cannot otherwise

---

[7]    A similar principle applies in the "consultant corollary" doctrine of the Freedom of Information Act.  This doctrine extends confidential protections to conversations with non-government employees. *See, e.g., Dep't of Interior & Bureau of Indian Affs. v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9–11 (2001); *Soucie v. David*, 448 F.2d 1067, 1078 n.44 (D.C. Cir. 1971).

10

be obtained.  *See Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586–87 (D.C. Cir. 1985); *see also Lederman*, 731 F.3d at 203; *Alexander*, 186 F.R.D. at 4.  This information must be first-hand knowledge related to the underlying claim being litigated that cannot be obtained elsewhere.  *See In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (per curiam); *see also Bogan v. City of Boston*, 489 F.3d 417, 423–25 (1st Cir. 2007).  Plaintiff has not shown that the third party has some unique knowledge about the basis for the Executive Orders, such that it cannot be obtained elsewhere.  Exhaustion of potential alternatives for the desired discovery is a prerequisite to making the showing that a high-level official has information that "cannot be obtained elsewhere."  *Alexander*, 186 F.R.D. at 4; *accord Cheney*, 544 F.3d at 314; *Simplex*, 766 F.2d at 586.  The same principles apply here with respect to someone believe, and widely known, to be and adviser and attorney to the President, the highest level government official, who is the holder of the executive and attorney-client privileges at hand here.

Plaintiff must make this showing even if the relevant official has personal knowledge of a matter related to the litigation.  In *Kelley v. Federal Bureau of Investigation*, the plaintiffs sought to depose then-Secretary of Homeland Security Jeh Johnson in conjunction with claims that information had wrongly been leaked to the press, in violation of the Privacy Act.  Civ. A. No. 13-0825, 2015 WL 13648073 (D.D.C. July 16, 2015).  The court reasoned that, even if Secretary Johnson had personal knowledge of relevant and necessary information, the subpoena for his deposition had to be quashed because the plaintiffs had "not yet established that they cannot obtain the information he may possess elsewhere."  *Id.* at *2 .

These principles have special force given that Plaintiff seeks discovery concerning alleged communications involving the President and someone believed to be his close adviser and attorney.  In *Cheney*, the Supreme Court emphasized in the context of civil discovery that "special considerations control when the Executive Branch's interest in maintaining the autonomy of its office and safeguarding the confidentiality of its communications are implicated."  542 U.S. at 385.  Significantly,

11

that case also involved alleged communications between private citizens and the President's advisers. *See id.* at 374.

Here, Plaintiff seeks information directly related to presidential action, Executive Orders, and settlement discussions. One of its requests to the third party relates to communications he may have had with certain law firms. *See* RFP 1 (seeking records of the third party's communications with 14 law firms). Plaintiff has not deposed these law firms or requested documents from them, even though the ABA characterizes itself as the "largest voluntary association of legal professionals." Compl. ¶ 23. If these 14 firms are members of the ABA, which they do appear to be, the Association can simply ask them for these records, and if they are not, the ABA can send subpoenas to the law firms. That is not only preferable to attempting to violate both the presidential communications privilege and the attorney-client privilege as a close presidential adviser and attorney, but also is a required step before even attempting such action. The ABA's preference to take the third party's deposition early in this case, going so far as to send subpoenas before the district court had even entered a scheduling order, cannot overcome its obligation to seek discovery from persons other than those whom Plaintiffs believe to be a presidential adviser. Upon exhausting alternative sources of information, the ABA would then need to demonstrate the third party possessed non-privileged, relevant information that it could not obtain anywhere else, which they cannot do.

## CONCLUSION

The Court should therefore GRANT the motion to quash and for a protective order.

12

Dated: July 2, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

DIANE KELLEHER
Director, Federal Programs Branch

CHRISTOPHER M. LYNCH
Chief Litigation Counsel

/s/ *M. Jared Littman*
M. JARED LITTMAN
JAMES J. WEN
ADAM S. FOX
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005
Jared.littman2@usdoj.gov
James.J.Wen@usdoj.gov
Adam.S.Fox@usdoj.gov

13