**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EXECUTIVE OFFICE OF THE PRESIDENT, *et al.*, | Case No. 1:26-mc-00114 (AHA) |
| Movants/Defendants, | |
| v. | Underlying Litigation: |
| AMERICAN BAR ASSOCIATION | *American Bar Association v. Executive Office of the President, et al.*, No. 25-cv-1888 (AHA) (D.D.C.) |
| Respondent/Plaintiff, | |
| IN RE THIRD PARTY SUBPOENAS | |

**RESPONDENT AMERICAN BAR ASSOCIATION'S OPPOSITION TO MOVANTS'
MOTION TO QUASH SUBPOENA OR FOR PROTECTIVE ORDER**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................1

II.     FACTUAL BACKGROUND ....................................................................................3

III.    LEGAL STANDARD ...............................................................................................5

IV.     THE GOVERNMENT'S MOTION TO QUASH THE SUBPOENA *DUCES TECUM* SHOULD BE DENIED........................................................................6

      A.    The Government lacks standing to object (and does not object) on grounds of burden, and lacks standing to assert the President's attorney-client privilege. .............................................................................6

      B.    No privilege is or can be claimed over Mr. Epshteyn's communications with other third parties. ....................................................8

      C.    The Government's blanket assertion of an absolute presidential communications privilege is wrong and does not provide a basis to quash the subpoena. ..............................................................................9

      D.    The Government must substantiate its claimed privileges on a privilege log, but has failed to do so. ..............................................12

      E.    Rule 408 is a rule of trial admissibility, not a privilege or limit on discovery ...............................................................................13

V.      THE GOVERNMENT'S MOTION TO QUASH THE SUBPOENA *AD TESTIFICANDUM* SHOULD BE DENIED .............................................14

      A.    Any limitations on depositions of "high-ranking government officials" do not apply to Mr. Epshteyn, who is not a "government official" of any ranking.......................................................................15

      B.    Hypothetical invocation of privilege in response to "yet-unasked questions" is not a basis to quash the deposition. ................................19

VI.     CONCLUSION........................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alexander v. Fed. Bureau of Investigation*,
   186 F.R.D. 1 (D.D.C. 1998)............................................................................2, 15, 16

*Am. Bar Ass'n v. Exec. Off. of the President*,
   No. 25-cv-01888 (AHA), 2026 WL 890410 (D.D.C. Mar. 31, 2026)......................................3

*Amobi v. D.C. Dep't of Corr.*,
   262 F.R.D. 45 (D.D.C. 2009)...............................................................................19

*Association of American Physicians & Surgeons, Inc. v. Clinton*,
   997 F.2d 898 (D.C. Cir. 1993)..............................................................................12

*Avery Dennison Corp. v. Four Pillars*,
   190 F.R.D. 1 (D.D.C. 1999)................................................................................13

*In re Beltway L. Grp., LLP*,
   No. 14-00380, 2017 WL 394343 (Bankr. D.D.C. Jan. 27, 2017)...........................................13

*Bogan v. City of Boston*,
   489 F.3d 417 (1st Cir. 2007)..............................................................................15

*Breiterman v. U.S. Capitol Police*,
   323 F.R.D. 36 (D.D.C. 2017)..............................................................................5, 6

*Brown v. D.C.*,
   No. 10-2250, 2021 WL 1439741 (D.D.C. Apr. 16, 2021)....................................................10

*Cheney v. U.S. District Court for D.C.*,
   542 U.S. 367 (2004)...........................................................................4, 7, 15, 18

*In re Cheney*,
   544 F.3d 311 (D.C. Cir. 2008) (per curiam) ........................................................15, 16, 18

*In re Chevron Corp.*,
   749 F. Supp. 2d 170 (S.D.N.Y. 2010).....................................................................13

*Dellums v. Powell*,
   642 F.2d 1351, 1363 & n.34 (D.C. Cir. 1980).............................................................10

*Dep't of Interior & Bureau of Indian Affs. v. Klamath Water Users Protective
   Ass'n*,
   532 U.S. 1 (2001)........................................................................................17

*Fenstermacher v. Moreno*,
No. 1:08-cv-01447, 2010 WL 5071042 (E.D. Cal. Dec. 7, 2010)............................................6

*Flanagan v. Wyndham Int'l, Inc.*,
231 F.R.D. 98 (D.D.C. 2005).................................................................................................2

*Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*,
234 F. Supp. 3d 209 (D.D.C. 2017)......................................................................................13

*Goldstein v. F.D.I.C.*,
494 B.R. 82 (D.D.C. 2013) .............................................................................................14, 19

*Gonzalez Ramos v. ADR Vantage, Inc.*,
No. 18-cv-01690, 2020 WL 7136840 (D.D.C. Dec. 7, 2020) ................................................19

*In re Grand Jury Proceedings*,
616 F.3d 1172 (10th Cir. 2010) ...........................................................................................10

*In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*,
823 F. Supp. 3d 1 (D.D.C. 2026) ...........................................................................................6

*Jiang v. NVIDIA Corp.*,
No. 26-MC-18-ABJ-MJS, 2026 WL 962496 (D.D.C. Apr. 9, 2026) ......................................13

*Judicial Watch v. U.S. Secret Service*,
726 F.3d 208 (D.C. Cir. 2013)..............................................................................................12

*Kelley v. Fed. Bureau of Investigation*,
No. 13-0825, 2015 WL 13648073 (D.D.C. July 16, 2015) .............................................15, 18

*Lederman v. N.Y.C. Dep't of Parks & Recreation*,
713 F.3d 199 (2d Cir. 2013)..................................................................................................15

*In re Lindsey*,
158 F.3d 1263, 1270-71, 1278-79 (D.C. Cir. 1998) ...........................................................8, 10

*NAACP Legal Def. Fund & Educ. Fund, Inc. v. U.S. Dep't of Just.*,
612 F. Supp. 1143 (D.D.C. 1985).........................................................................................13

*Northrop Corp. v. McDonnell Douglas Corp.*,
751 F.2d 395 (D.C. Cir. 1984).................................................................................................5

*Petruss Media Grp., LLC v. Advantage Sales & Mktg. LLC*,
347 F.R.D. 39 (D.D.C. 2024)........................................................................................5, 6, 10

*Property of the People, Inc. v. Office of Management & Budget*,
394 F. Supp. 3d 39 (D.D.C. 2019).........................................................................................12

iii

*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997) ...................................................................................2, 9, 13

*In re Shelton Fed. Grp., LLC*,
No. 15-00623, 2018 WL 4482560 (Bankr. D.D.C. Aug. 21, 2018) .........................................9

*Simplex Time Recorder Co. v. Sec'y of Labor*,
766 F.2d 575 (D.C. Cir. 1985) ................................................................................................15

*Soucie v. David*,
448 F.2d 1067 (D.C. Cir. 1971)...............................................................................................17

*Trump v. Mazars USA, LLP*,
591 U.S. 848, 864-65 (2020) ...................................................................................................11

*Trump v. United States*,
603, U.S. 593, 612 (2024).........................................................................................................11

*U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*,
301 F.R.D. 20 (D.D.C. 2014)......................................................................................................6

*In re United States (Bernanke)*,
542 F. App'x 944 (Fed. Cir. 2013) ...........................................................................................15

*In re United States (Holder)*,
197 F.3d 310 (8th Cir. 1999) ....................................................................................................15

*United States v. Davis*,
596 F.3d 852 (D.C. Cir. 2010)..................................................................................................14

*United States v. Nixon*,
418 U.S. 683, 706, 713 (1974)............................................................................................11, 16

*W. Coast Prods., Inc. v. Does 1-5829*,
275 F.R.D. 9 (D.D.C. 2011).........................................................................................................6

*Zimmerman v. Al Jazeera Am., LLC*,
329 F.R.D. 1 (D.D.C. 2018).......................................................................................................16

**Rules**

Fed. R. Civ. P. 26(b) ........................................................................................................................2

Fed. R. Civ. P. 26(c) ........................................................................................................................6

Fed. R. Civ. P. 45(d) ..............................................................................................................5, 10, 14

Fed. R. Civ. P. 45(e) ..............................................................................................................12, 13, 20

Fed. R. Civ. P. 408 ..........................................................................................................13, 14

## I.   INTRODUCTION

The Government's Motion to Quash Subpoena or For Protective Order, ECF No. 2 ("Motion" or "Mot.") asks this Court to bless a discovery shell game. In the underlying litigation, the Government insists that the American Bar Association ("ABA") may not seek discovery from the Office of the President without first exhausting potential third-party sources. Yet when the ABA does exactly that by serving Rule 45 subpoenas on Boris Epshteyn, a third-party "non-government employee" by the Government's own admission, Mot. at 5, the Government moves to quash, arguing that the documents and testimony sought from the third-party source are privileged. As the Court observed at the July 31 hearing on the ABA's separate Motion to Compel, the Government's position "turn[s] into a catch-22": the ABA has "got to go to third parties, but they can't get it there." Hr'g Tr. 37:19–25. In the Government's world, the ABA can never obtain the full scope of relevant evidence at the heart of its case—from the White House *or* from third parties outside of it.

The Government constructs this catch-22 out of a blanket assertion of absolute presidential privilege over "**any**" communications Mr. Epshteyn "may or may not have had" with the President or his staff. Mot. at 5. (Throughout the Motion, the Government refuses to "confirm []or deny" whether any such communications took place, or even whether Mr. Epshteyn in fact served as an advisor to the President.) But the Supreme Court has repeatedly rejected the absolute form of privilege the Government advances here, and the D.C. Circuit has repeatedly required that parties moving to quash subpoenas on grounds of privilege substantiate those claims with **particularized** assertions of privilege, rather than the blanket (and entirely vague) assertion the Government advances here. By refusing to particularize or log its claims—or even to describe them specifically in the Motion—the Government has deprived the ABA and the Court of any ability to assess the

1

asserted privilege, much less challenge it. *See* Fed. R. Civ. P. 26(b)(5)(A), 45(e)(2). The appropriate next step is a privilege log and, if necessary, an *in camera* review upon any challenge—not the "extraordinary measure" of quashing the Subpoenas wholesale. *Flanagan v. Wyndham Int'l, Inc.*, 231 F.R.D. 98, 102 (D.D.C. 2005).

The overbreadth of the Government's Motion is also confirmed by an obvious fact it never confronts: a substantial portion of the subpoenaed materials are indisputably not privileged at all. The document subpoena expressly seeks Mr. Epshteyn's communications with fourteen law firms (RFP 1); communications concerning the negotiation of the Administration's law-firm settlements (RFP 3); and social media communications (RFP 5). The Government asserts no privilege as to these materials, and it cannot because no privilege covers communications "voluntarily revealed to third parties outside the White House[.]" *In re Sealed Case,* 121 F.3d 729, 742 (D.C. Cir. 1997).

The Government also wrongfully asks this Court to quash the deposition subpoena in its entirety based on a standard applicable to "high-ranking government officials"—which Mr. Epshteyn inarguably is not. *Alexander v. Fed. Bureau of Investigation*, 186 F.R.D. 1, 3 (D.D.C. 1998). That standard has **never** been applied to a private party with no official role in the government—and there is no reason to do so here, particularly where the Government has refused even to describe Mr. Epshteyn's role. Even if there were a higher bar to justify a deposition of Mr. Epshteyn (there is not), it would be met here, where the ABA intends to obtain non-privileged information based on Mr. Epshteyn's publicly-reported first-hand knowledge of key issues in this case.

The Government's ever-shifting positions—exhaustion when the ABA seeks discovery from the White House, and privilege when the ABA looks elsewhere—reveal its true objective:

2

ensuring that critical, relevant discovery is never brought to light. The Government's Motion should be denied.

## II.    FACTUAL BACKGROUND

On June 16, 2025, the ABA sued federal officials and agencies, alleging they adopted an unlawful, coordinated policy of sanctioning law firms and their lawyers for engaging in speech the Government does not like. ABA ECF No. 1 ("Compl.") ¶¶ 4–22.[1] The ABA alleges that the Government effectuated a policy of law firm intimidation (the "Policy") designed to coerce lawyers and law firms to abandon clients, causes, and policy positions the President does not like. *Id*. ¶ 4. The ABA alleges the Government effectuated this Policy by issuing and threatening to issue punitive executive orders against law firms ("Law Firm Orders"), which could be avoided through settlements (the "Agreements") requiring each settling law firm to make changes to its hiring practices, alter pro bono client selection practices, change "diversity, equity, and inclusion" practices, and commit tens or even hundreds of millions of dollars in pro bono resources to causes the Administration favored. *Id.* ¶¶ 4, 8, 88–95, 130, 136, 149, 151.

On March 31, 2026, the Court denied the Government's motion to dismiss for lack of subject matter jurisdiction. *Am. Bar Ass'n v. Exec. Off. of the President* ("*ABA v. EOP*"), No. 25-cv-01888 (AHA), 2026 WL 890410, at *10 (D.D.C. Mar. 31, 2026).

On May 13, 2026, the ABA served its first discovery requests. *See* ABA ECF No. 61-1. As relevant here, the requests included Requests for Production ("RFPs") Nos. 1–16 directed to the Executive Office of the President, which seek, among other things: (1) communications exchanged with the law firms that were the subject of Law Firm Orders and those firms that entered into Agreements with the Government (RFPs 1–2); (2) the Agreements with the law firms that entered

---

[1] References to documents filed in the underlying litigation are cited as "ABA ECF."

into them (RFP 7); (3) communications involving Boris Epshteyn relating to any potential Law Firm Order or related to negotiation of the Agreements (RFPs 3–4); and (4) social media posts and messages related to the Law Firm Orders or the Agreements (RFP 15).

On June 2, 2026, the ABA served a notice of subpoena on the Government reflecting the ABA's intention to serve Mr. Epshteyn with a subpoena *duces tecum* and a subpoena *ad testificandum* (the "Subpoenas"). The document subpoena includes requests for Mr. Epshteyn's communications with the law firms that were the subject of Law Firm Orders and those that entered into Agreements with the Government (Subpoena RFP 1); communications related to the possible issuance of any Law Firm Order (Subpoena RFP 2) or to the Orders themselves (Subpoena RFP 4); and communications reflecting or related to the Agreements (Subpoena RFP 3). It also includes a request for any of Mr. Epshteyn's social media posts or messages related to any of the Law Firm Orders or the Agreements (Subpoena RFP 5). The Subpoenas were served on Mr. Epshteyn personally on June 18, 2026.

On June 12, 2026, the Government served its objections and responses to the ABA's RFP Nos. 1–16, claiming that each RFP was overbroad in violation of *Cheney v. U.S. District Court for D.C.*, 542 U.S. 367 (2004). ABA, ECF No. 61-2, at 12–16, 26–27 (objections to RFPs 1–4, 15). The EOP further argued in response to the ABA's Motion to Compel, ABA ECF No. 61, that the ABA must first exhaust "obvious alternative sources of the requested information" before "propounding its discovery requests on the White House," ABA ECF No. 67, at 6. With respect to RFPs 1 and 2 specifically, related to communications with law firms, the EOP argued that the ABA must seek responsive documents from "the targeted law firms." ABA ECF No. 67, at 6.

On July 2, 2026, the Government served a notice of subpoena indicating its intention to serve a subpoena *duces tecum* on each of the fourteen law firms that either were subject to a Law

4

Firm Order or entered into an Agreement with the Government, and a subpoena *ad testificandum* on a managing partner or chair of each such firm. ABA ECF No. 67-1.

Also on July 2, 2026—and notwithstanding its position that the ABA must seek documents from third-party sources of the information before it can obtain those documents from the EOP— the Government moved in the Southern District of New York to quash the Subpoenas. *See* ECF No. 2. Upon consent of the parties and Mr. Epshteyn, the Motion was transferred to this Court and marked as related to the underlying litigation. ECF Nos. 11, 14.

Mr. Epshteyn has not provided any response to the Subpoenas. After repeated requests by counsel for the ABA to the Government to provide contact information for Mr. Epshteyn or his counsel, counsel for Mr. Epshteyn first contacted counsel for the ABA on July 23, 2026. Mr. Epshteyn, through counsel, has asserted that he need not respond to the Subpoenas until the Government's present Motion is resolved.

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 45(d)(3)(A) provides that a court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." A party seeking to quash a subpoena based on the invocation of privilege "must adequately demonstrate that applicable privileges would in fact protect" the material sought. *Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984). The burden rests with the "movant to establish that a protective order should be granted or that a subpoena duces tecum should be quashed." *Petruss Media Grp., LLC v. Advantage Sales & Mktg. LLC*, 347 F.R.D. 39, 41 (D.D.C. 2024). Blanket assertions of privilege are improper and "will not suffice" to substantiate a motion to quash. *Id.* "The quashing of a subpoena is an extraordinary measure, and is usually inappropriate absent extraordinary circumstances." *Breiterman v. U.S. Capitol Police,* 323 F.R.D. 36, 42 (D.D.C. 2017) (citation omitted). "Accordingly, a movant's burden is

greater for a motion to quash than if the movant were seeking more limited protection." *Id.* (cleaned up); *see U.S. Dep't of the Treasury v. Pension Benefit Guar. Corp.*, 301 F.R.D. 20, 25 (D.D.C. 2014) (same).[2]

## IV.       THE GOVERNMENT'S MOTION TO QUASH THE SUBPOENA *DUCES TECUM* SHOULD BE DENIED

The Motion to quash as to the ABA's document subpoenas is overbroad, improper, unsubstantiated, and wrong on numerous grounds. It should be denied for at least five reasons as set forth below.

### A.       The Government lacks standing to object (and does not object) on grounds of burden, and lacks standing to assert the President's attorney-client privilege.

As an initial matter, the Government cannot seek relief any broader than the interests it stands to protect: its own. "Not just anyone may seek to quash a subpoena; a party must have standing to do so." *In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*, 823 F. Supp. 3d 1, 6 (D.D.C. 2026). "A party [thus] generally lacks standing to challenge a subpoena issued to a third party absent a claim of privilege, proprietary interest, or personal interest in the subpoenaed matter." *W. Coast Prods., Inc. v. Does 1-5829*, 275 F.R.D. 9, 16 (D.D.C. 2011) (citation omitted). The Government's limited standing has two practical impacts here.

*First*, even though the Government never expressly asserts any "burden" as a basis to quash the subpoena *duces tecum*, a movant "lacks standing to object to [a] subpoena based on the undue burden" to another. *Fenstermacher v. Moreno*, No. 1:08-cv-01447, 2010 WL 5071042, at *3 (E.D. Cal. Dec. 7, 2010); *W. Coast Prods.*, 275 F.R.D. at 16 (citing *Fenstermacher* for this proposition).

---

[2] Protective orders may issue under Federal Rule of Civil Procedure 26 or 45. The Government invokes Rule 26, *see* Mot. at 1, but Rule 26(c) is inapplicable here. It permits "[a] party or any person from whom discovery is sought" to seek such a protective order, but Movants are not a "party" with respect to the Subpoenas nor are they a "person from whom discovery is sought." Although immaterial to resolution of this dispute, the correct rule is Rule 45 and not Rule 26. *Petruss Media Grp.*, 347 F.R.D. at 41.

And indeed, the Government never claims any burden here—for itself or Mr. Epshteyn. The Government includes generalized citations to *Cheney*, Mot. at 11, but never ties it to any claim of burden, and never argues that the ABA's Subpoenas to Mr. Epshteyn involve "overly broad discovery requests" that intrude on or unnecessarily burden "the Office of the President," or otherwise raise separation-of-powers concerns, as was the core issue in *Cheney*, 542 U.S. at 386. Thus, the Government has not and cannot invoke *Cheney* as a basis to quash the Subpoenas here— as the Government itself admitted at the July 31 Hearing: "in the context of a Rule 45 subpoena, you know, directed at the third-party individuals, we basically skip over the entire *Cheney* court . . . . [w]e bypass the *Cheney* problem, the separation of powers problem, at least when it comes to going to the White House for that information." July 31, 2026 Hr'g Tr. 38:7–15.

*Second*, the Government also has not asserted (and lacks standing to assert) attorney-client privilege over communications between the President and Mr. Epshteyn, to the extent there is any claim that the latter was serving as the President's personal lawyer—something the Government goes out of its way to "neither confirm[] nor den[y]." Mot. at 2. At most, the Government speculates that documents sought by the subpoena **could** be privileged, based on various factual predicates that **might** exist: "**if** there were communications between [Epshteyn], who is an attorney, and the President, who is that attorney's client, which is neither confirmed nor denied here, such communications **would be** completely and totally protected by the oldest privilege known in law: the attorney-client privilege." *Id.* at 1–2 (emphases added); *see id.* at 9 ("[T]o the extent that a third party was a lawyer and had an attorney-client relationship with the President, that would provide a separate basis for withholding any communications properly subject to that attorney-client privilege.").

But even if the attorney-client privilege were applicable at all, the Government has no standing to assert it here. As the D.C. Circuit expressly recognized in *In re Lindsey*, a category difference separates privileges asserted by the President "in his personal capacity" versus privileges held by the "Office of the President." 158 F.3d 1263, 1278–79 (D.C. Cir. 1998). If there are any "personal attorney-client . . . privileges" that cover the communications sought, President Trump—not the Government—must assert them. *See id.* at 1278 ("[T]he President is entitled in his *personal* capacity to the same privileges as any person").[3]

### B.      No privilege is or can be claimed over Mr. Epshteyn's communications with other third parties.

The Motion to Quash is also facially overbroad and must be denied—at least in part—because the Government does not assert any privilege over Mr. Epshteyn's communications with other third parties. Of the five Requests for Production in the ABA's subpoena *duces tecum*, the Government makes no argument at all about Requests 1 and 5. *See* ECF No. 2-1 at ECF Page 19. Those requests are:

- RFP No. 1: "All communications on or after January 20, 2025 that You sent to, received from, or participated in with [14 identified law firms]."

- RFP No. 5: "Social media posts, and any direct messages, discussing or relating to any Law Firm Order or Agreement."

---

[3] Even if the Government had standing to assert attorney-client privilege on behalf of President Trump, the Government fails to substantiate the claim. The "privilege applies only if the person to whom the communication was made is 'a member of the bar of a court' who 'in connection with the communication is acting as a lawyer' and the communication was made 'for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding.'" *Lindsey*, 158 F.3d at 1270 (cleaned up). The Government makes no argument (or showing) that would suffice to establish privilege over any documents sought by the subpoena.

8

The Government in its Motion also recognizes that the remaining RFPs (Nos. 2–4) may include "communications with named law firms." *Id.* at 9. But the Government nowhere asserts any privilege over those communications—and for good reason. Not only would they independently fall into the unobjected-to Request No. 1, but any privilege over them must be deemed waived because they were "voluntarily revealed to third parties outside the White House." *Sealed Case,* 121 F.3d at 742.[4]

Because the Government does not claim any interest in or privilege over Mr. Epshteyn's communications with third parties, there is no basis to quash the document subpoena as to those requests. *See In re Shelton Fed. Grp., LLC*, No. 15-00623, 2018 WL 4482560, at *1 (Bankr. D.D.C. Aug. 21, 2018) ("If the [moving] party does not show a personal right or privilege [in the subpoenaed material], the party lacks standing, and the motion must be denied without reaching the merits.").

**C.    The Government's blanket assertion of an absolute presidential communications privilege is wrong and does not provide a basis to quash the subpoena.**

Without identifying a single document or communication, the Government also argues broadly that its Motion should be granted—and the subpoena quashed—because "**Any** communications that [Epshteyn] may or may not have had with the President, or his close advisers, sought in Plaintiff's request for production, would be privileged." Mot. at 5. This blanket assertion

---

[4] On August 10, 2026, the Office of Legal Counsel issued a Memorandum asserting that the presidential communications privilege can, under certain circumstances, apply to communications "with private advisers." Office of Legal Counsel, "Applicability of Executive Privilege to Presidential Communications with Private Advisers," Aug. 10, 2026, *available at* https://www.justice.gov/olc/media/1457271/dl. Putting aside that the Memorandum is self-serving both in timing and content, even according to the Memorandum, "the privilege requires the communication to have been confidential at the time of its creation and that the President continue to treat it as such." *Id*. at 19. Communications including Mr. Epshteyn and third parties do not meet even that proposed requirement, which is not the law and is entitled to no deference by this Court in view of the preposterous timing and circumstances of the OLC opinion's issuance.

9

of privilege has been routinely rejected and falls fatally short of the particularized showing of privilege required to quash a subpoena.

To quash a subpoena on grounds of privilege, the movant bears the burden to "demonstrate[e] that the information sought in the subpoenas is 'privileged or other protected matter.'" *Petruss Media Grp.*, 347 F.R.D. at 44 (quoting Fed. R. Civ. P. 45(d)(3)(A)(iii)). "A blanket assertion of the privilege claimed will not suffice. Rather, the proponent must conclusively prove each element of the privilege" asserted, *id.* (cleaned up), which must be asserted "as to specific questions or documents." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010).

Blanket privilege assertions will not substantiate a privilege regardless of what specific privilege is asserted. In *Dellums v. Powell*, the D.C. Circuit affirmed the district court's rejection of "blanket" assertions of presidential communications privilege and held: "[w]e think it abundantly clear . . . that **any** claim of privilege, whether of executive or Presidential privilege or of common-law evidentiary privilege based upon Mr. Nixon's privacy interests, must be made with particularity" as to each "particular transcript" sought to be withheld. 642 F.2d 1351, 1363 & n.34 (D.C. Cir. 1980) (emphasis added). The D.C. Circuit thus affirmed that the "District Court correctly rejected the blanket assertion of privilege as an attempt to relitigate the issue of absolute privilege that Mr. Nixon has lost twice before in this court." *Id.* Similarly, in *Lindsey*, the D.C. Circuit held that "[a] blanket assertion of the privilege [by the Office of the President] will not suffice" to substantiate either "executive privilege" or "attorney-client privilege." 158 F.3d at 1270–71; *see also Brown v. D.C.*, No. 10-2250, 2021 WL 1439741, at *5 (D.D.C. Apr. 16, 2021) (rejecting blanket assertion of deliberative process privilege as "courts will not assume the privilege applies based on blanket assertions").

10

The Government's blanket assertion of presidential communications privilege—over all communications between the White House and a private third party—is also wrong. The Government argues the privilege "**has** to apply" to Mr. Epshteyn's communications with the White House for two reasons: (1) the privilege shields not just the content of Presidential communications but also his advisers' "identit[ies]," and (2) if Presidential advisers know their identities could be exposed in litigation, that would "chill participation in future deliberations." Mot. at 6–7. But these (and similar) arguments for an absolute privilege have been repeatedly rejected by the very Supreme Court cases the Government cites.

In *United States v. Nixon*, the Supreme Court refused to adopt an absolute presidential communications privilege on the grounds of a "broad, undifferentiated claim of public interest in the confidentiality of [Presidential] conversations," holding instead that "[t]he generalized assertion of privilege must yield to the demonstrated, specific need for evidence" in the particular context in which that need arises. 418 U.S. 683, 706, 713 (1974). In *Trump v. United States*, the Supreme Court reaffirmed *Nixon*'s "reject[ion]" of the former President's "claim of 'absolute privilege.'" 603 U.S. 593, 612 (2024). And in *Trump v. Mazars USA, LLP*—which concerned a Congressional subpoena for the President's personal financial and tax records—the Supreme Court explicitly rejected the Government's argument that a uniform set of "exacting standards [apply] to *all* subpoenas for the President's information, without recognizing distinctions between privileged and nonprivileged information, [or] between official and personal information . . . ." 591 U.S. 848, 864–65 (2020).[5]

---

[5] Implicit in these cases' rejection of an absolute privilege is rejection of the Government's argument that the mere identities of individuals who communicate with the President are shielded from discovery—a rule that no court (to the ABA's knowledge) has ever adopted.

The Government also cites three cases that have no bearing on its claim of blanket privilege. It cites *Association of American Physicians & Surgeons, Inc. v. Clinton*, 997 F.2d 898, 908–09 (D.C. Cir. 1993), which does not concern any claim of privilege, but only the applicability of Federal Advisory Committee Act exemptions to a particular Presidential Task Force. Also irrelevant is *Property of the People, Inc. v. Office of Management & Budget*, 394 F. Supp. 3d 39, 48 (D.D.C. 2019), a FOIA case concerning whether specific entries on a *Vaughn* index sufficed to substantiate the Government's document-specific withholdings under FOIA Exemption 5. And in *Judicial Watch v. U.S. Secret Service*, 726 F.3d 208, 217 (D.C. Cir. 2013)—a FOIA statutory interpretation case—the D.C. Circuit held that certain White House visitor logs were not "agency records" under FOIA, while others were. None substantiates or relates to the Government's broad and unparticularized claim that "any" possible communication sought from Mr. Epshteyn is covered by a blanket privilege.

The Government's blanket assertion of an absolute presidential communications privilege is flat-out wrong and does not provide a basis to quash the subpoena.

### D.    The Government must substantiate its claimed privileges on a privilege log, but has failed to do so.

The proper course here was for the Government to assert any claim(s) of privilege over specific documents and substantiate its claims of privilege on a log. *See* Fed. R. Civ. P. 45(e)(2)(A), (B) ("If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it."). A party claiming privilege over subpoenaed materials—or seeking to quash the subpoena on grounds of privilege—"must provide a contemporaneous privilege log that describes the materials without revealing information itself privileged or protected, but with sufficient specificity to enable other parties to assess the privilege

12

claim." *Jiang v. NVIDIA Corp.*, No. 26-MC-18-ABJ-MJS, 2026 WL 962496, at \*3 (D.D.C. Apr. 9, 2026) (cleaned up, citing Fed. R. Civ. P. 45(e)(2)(A)(ii)).

That is precisely the procedure followed in *In re Sealed Case*, in which the Government's assertion of the presidential communications privilege (in response to a grand jury subpoena) could be evaluated only because the government provided a log justifying its assertion of privilege for each of the 84 documents withheld. 121 F.3d at 735, 757–58; *accord In re Beltway L. Grp., LLP*, No. 14-00380, 2017 WL 394343, at \*3 (Bankr. D.D.C. Jan. 27, 2017) ("The court is also mindful of case law requiring that a privilege log be produced within a reasonable period of time when a motion to quash is premised on privilege."); *In re Chevron Corp.*, 749 F. Supp. 2d 170, 183 (S.D.N.Y. 2010) (upholding waiver of privilege finding where party from whom discovery was sought gained tactical advantage by withholding privilege log while motion to quash was pending).

Although the Government's "[f]ailure to produce a privilege log may be deemed a waiver of the privilege," *Avery Dennison Corp. v. Four Pillars*, 190 F.R.D. 1, 2 (D.D.C. 1999), the Court should instead order that to preserve any privilege claim over the documents sought by the subpoena, the Government must furnish a Rule 45(e)(2)-compliant log within 10 days of receiving Mr. Epshteyn's documents.

### E.       Rule 408 is a rule of trial admissibility, not a privilege or limit on discovery.

In arguing that Rule 408 is a discovery shield that protects negotiations over the Administration's "settlements" with law firms, the Government "misapprehend[s] FRE 408" entirely. *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 234 F. Supp. 3d 209, 211 n.1 (D.D.C. 2017). Rule 408 may only be used to "limit[] a document's relevance at trial, not its disclosure for other purposes." *Id.* (citation omitted). "A party is not allowed to use Rule 408 as a screen for curtailing his adversary's right of discovery." *Id.* (cleaned up); *see NAACP Legal Def. Fund & Educ. Fund, Inc. v. U.S. Dep't of Just.*, 612 F. Supp. 1143, 1146 (D.D.C. 1985) (holding

13

that Rule 408 "was never intended to be a broad discovery privilege"). Rule 408 is thus wholly inapplicable to a motion to quash under Federal Rule of Civil Procedure 45(d)(3)(A)(iii), which requires quashing only where a subpoena "requires disclosure of **privileged or other protected matter** . . . ." Rule 408 material is neither. And the lone case the Government cites—*United States v. Davis*, 596 F.3d 852, 859 (D.C. Cir. 2010)—concerns admissibility at trial, not discovery. Rule 408 provides no basis for quashing the subpoena.

*       *       *

The Government's Motion to Quash the subpoena *duces tecum* should be denied.

## V.   THE GOVERNMENT'S MOTION TO QUASH THE SUBPOENA *AD TESTIFICANDUM* SHOULD BE DENIED

Relying on case law that applies exclusively to "high-ranking government officials," the Government improperly asks this Court to quash the deposition subpoena in its entirety. Mot. at 10 (citing *Alexander*, 186 F.R.D. at 4). But there is no support for the Government's argument that the ABA should be prohibited from deposing a person who is not a governmental official and who has first-hand knowledge of critical issues in this case. The "apex doctrine" asserted by the Government applies exclusively to high-level government officials—which Mr. Epshteyn is not. And even if some heightened standard applied, Mr. Epshteyn is publicly reported to have played a key role in the negotiation of Agreements which are at the core of this case—a role which the Government **does not dispute** in its Motion. To the extent the Government has any basis to object to specific questions as privileged, "this is not a proper ground for quashing a subpoena *ad testificandum*," and the Government may raise objections to specific questions "as questions implicating privileged conversations arise." *Goldstein v. F.D.I.C.*, 494 B.R. 82, 90 (D.D.C. 2013).

14

**A. Any limitations on depositions of "high-ranking government officials" do not apply to Mr. Epshteyn, who is not a "government official" of any ranking.**

The entire basis for the Government's Motion with respect to the deposition subpoena is its mistaken insistence that the ABA must "demonstrate exceptional circumstances" justifying its request for a deposition of Mr. Epshteyn. Mot. at 10. But as **every case** cited by the Government makes clear, this "heightened burden" applies when a party seeks to depose "**high-ranking government officials**." *Alexander*, 186 F.R.D. at 2 & n.1, 4 (party sought depositions of "Senior Advisor to the President for Policy and Strategy and Executive Assistant to the Chief of Staff"; "Assistant to the President and Director of Communications for the White House"; and "Assistant to the President"); *Lederman v. N.Y.C. Dep't of Parks & Recreation*, 713 F.3d 199, 201 (2d Cir. 2013) (party sought depositions of Mayor and Deputy Mayor of New York City); *In re United States (Bernanke)*, 542 F. App'x 944, 946 (Fed. Cir. 2013) (party sought deposition of Chairman of the Federal Reserve); *In re United States (Holder)*, 197 F.3d 310, 311 (8th Cir. 1999) (party sought depositions of the Attorney General and Deputy Attorney General); *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007) (party sought deposition of the Mayor); *Kelley v. Fed. Bureau of Investigation*, Civ. No. 13-0825, 2015 WL 13648073, at *1 (D.D.C. July 16, 2015) (party sought deposition of Secretary of the Department of Homeland Security); *In re Cheney*, 544 F.3d 311, 314 (D.C. Cir. 2008) (per curiam) (party sought deposition of the Chief of Staff to the Vice President); *see also Simplex Time Recorder Co. v. Sec'y of Labor*, 766 F.2d 575, 586 (D.C. Cir. 1985) (party sought testimony of "top department of Labor officials"). The only D.C. Circuit case cited by the Government which addresses deposing a "high-ranking executive officer[]" is *In re Cheney*. 544 F.3d at 314. The court there observed only that "a high-ranking member of the Office" of the Vice President should not be deposed when a lower-level official "would seem more logically suited" to answer the relevant questions. *Id.* And *Cheney* **permitted** the deposition of

15

other officials from the Office of the Vice President in light of the relevance and scope of the intended discovery. *See id.*

In any event, Mr. Epshteyn is not a "high-ranking government official," or a government official of any rank or kind. The entire rationale behind applying a heightened burden with respect to depositions of high-ranking government officials is that "[g]iven the nature of their positions at the White House, there is a substantial likelihood that depositions would significantly interfere with their **ability to perform their governmental duties**." *Alexander*, 186 F.R.D. at 3, 4 (emphasis added) (also observing that, unlike here, the EOP alleged that "these individuals possess absolutely no relevant information regarding the underlying claims in this case"); *see also Zimmerman v. Al Jazeera Am., LLC*, 329 F.R.D. 1, 6 (D.D.C. 2018) ("The apex doctrine . . . derives from the premise that government officials should be allowed to perform their duties without undue disruption and reflects a desire to protect the integrity of the administrative process.").

Unsurprisingly, the Government has not identified a single case in which this proposed "extraordinary circumstances" standard, Mot. at 5, has been applied to the proposed deposition of a "non-government employee," *id.*, based on their alleged (and unconfirmed by the Government) status as an informal advisor. The Government suggests, with a single sentence of analysis, that the same framework should apply to a "private adviser" to the President, citing *United States v. Nixon*. But that passage in *Nixon* merely describes the importance of "the confidentiality of Presidential communications," before rejecting Nixon's claim of absolute privilege. 418 U.S. at 705. And the potential existence of a claim of **privilege** with respect to some testimony does not

16

suggest that the "apex doctrine"—which is based on concerns related to burden—must apply, or that a deposition should be prohibited outright.[6]

The rationale for the "apex doctrine" does not apply to a deposition of Mr. Epshteyn because Mr. Epshteyn has no governmental duties to perform. Indeed, the Government goes out of its way to avoid making any specific representation whatsoever as to what, exactly, Mr. Epshteyn does. Instead, the Government uses intentionally vague language with respect to Mr. Epshteyn's role—for example, the Government refers to Mr. Epshteyn's "alleged status as a private adviser and counsel to the President," Mot. at 10, while explicitly refusing to "confirm or deny whether the President" in fact received advice or counsel from Mr. Epshteyn, *id*. at 1. *See also id.* at 2 (suggestion that Mr. Epshteyn was the President's attorney "is neither confirmed nor denied here"); 10 (referring to Mr. Epshteyn as "someone believed . . . to be an adviser and attorney to the President" but refusing to clarify whether Mr. Epshteyn has in fact acted as an "adviser and attorney to the President" with respect to the issues in this case). Thus, even if the caselaw applicable to "high-level government officials" could conceivably be applied to someone with no role in government, the Motion should still be denied because the Government has failed entirely to articulate (1) what Mr. Epshteyn's role is; (2) why his role should be afforded the same

---

[6] The Government's citations to FOIA cases also do not support its position. *See* Mot. at n.7 (citing cases). Both cases relate to the interpretation of FOIA exemption 5—which provides an absolute exemption from FOIA disclosure requirements—and neither included any analysis related to obtaining testimony from a non-government employee. *See Dep't of Interior & Bureau of Indian Affs. v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 12 (2001) (explicitly refusing to decide whether reports prepared by formally-engaged outside consultants qualify for FOIA exemption 5); *Soucie v. David*, 448 F.2d 1067, 1078 & n.44 (D.C. Cir. 1971) (finding that although report prepared by "outside experts" might be covered by exemption 5, the Government had failed to offer any "evidence to indicate that releasing the factual information . . . will expose the decisional processes of the President or other executive officers with policy-making functions").

17

protections as a high-level government official; or (3) how permitting his deposition would interfere with essential government functions.

Even if the Court were to find that the ABA must meet some heightened standard for Mr. Epshteyn's deposition, the circumstances would still warrant denial of the Motion. First, any such "heightened standard applies only where the official is being asked to testify about the deliberative process relevant to his **official duties**." *Kelley*, 2015 WL 13648073, at *1 (emphasis added). Even if applicable to Mr. Epshteyn, the doctrine would not justify quashing the deposition subpoena in its entirety, given that numerous areas of testimonial inquiry have nothing to do with any deliberative process (or, for that matter, any official duties, of which Mr. Epshteyn has none). Rather, they relate to Mr. Epshteyn's communications with third parties.

In any event, Mr. Epshteyn is widely reported to have been closely involved in the execution of the Law Firm Intimidation Policy, including, for example, in the negotiation of the Agreement between the Government and Paul Weiss.[7] Tellingly, the Government does not deny that Mr. Epshteyn has direct personal knowledge of conduct at the core of this case. Nor does the Government—as it did in *Cheney*—offer any lower-level individual who "would seem more logically suited to" provide the relevant testimony. 544 F.3d at 314. Indeed, to date, the Government has refused to identify **any** individuals within the Executive Office of the President who have discoverable information at all. And the ABA cannot obtain all of the information Mr. Epshteyn may possess by deposing some unidentified number of unnamed individuals at law firms

---

[7] *See* Michael S. Schmidt and Jessica Silver-Greenberg, "How a Top Law Firm Went From Standing Up to Trump to Bending the Knee," *The New York Times*, Aug. 2, 2026, *available at* https://www.nytimes.com/2026/08/02/us/politics/paul-weiss-trump.html.

who may have communicated with Mr. Epshteyn, because the testimony of those individuals would necessarily be limited to whatever Mr. Epshteyn chose to share with them.[8]

### B. Hypothetical invocation of privilege in response to "yet-unasked questions" is not a basis to quash the deposition.

In order to quash the deposition subpoena in its entirety on the basis of privilege—even attorney-client privilege—this Court "would have to find that there is not a single question that could be propounded to [Mr. Epshteyn] that would not be objectionable" on grounds of privilege. *Amobi v. D.C. Dep't of Corr.*, 262 F.R.D. 45, 50 (D.D.C. 2009) (quotations omitted). The Government cannot meet that standard.

As discussed in detail above, at minimum, the Government has no claim of privilege with respect to questions related to Mr. Epshteyn's communications with any law firms with which he discussed the possibility of a Law Firm Order or the negotiation of an Agreement with the Government; or any relevant communications he had via social media. The Government's arguments with respect to privilege are therefore "not a proper ground for quashing the subpoena *ad testificandum*, but rather [are] a reason for objecting to certain questions on a case by case basis, as questions implicating privileged conversations arise." *Goldstein*, 494 B.R. at 90; *see also Gonzalez Ramos v. ADR Vantage, Inc.*, No. 18-cv-01690, 2020 WL 7136840, at *3 (D.D.C. Dec. 7, 2020) (granting request for deposition of employee of the U.S. Department of Agriculture notwithstanding argument that proposed topics "may intrude on USDA's deliberative process privilege" because "USDA can object if it believes any of [the] questions implicate the deliberative process privilege," and the court "cannot assume that [the witness's] responses to as-yet unasked

---

[8] The Government also indicated that it would seek the depositions of managing partners from the law firms—apparently in order to bolster its position on this Motion. Yet the Government indicated to the Court at a conference on July 31 that there are no depositions scheduled and that "the deposition dates that were noticed are held in abeyance pending further case developments." Hr'g Tr. 7:24–25.

questions will be privileged"). The Motion to quash the subpoena *ad testificandum* should also be denied.

## VI.    CONCLUSION

For the reasons described above, the ABA respectfully requests that the Court deny the Government's Motion. Should the Government raise a privilege objection to the production of certain documents responsive to the document subpoena, it may raise such an objection in a privilege log that "expressly make[s] the claim" of privilege and "describe[s] the nature of the withheld documents . . . in a manner that . . . will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A). And if the Government has a basis to object to any specific questions at Mr. Epshteyn's deposition, it may do so on a question-by-question basis. A proposed order is attached.

Dated: August 11, 2026

*/s/ Steve Seigel*
Steve Seigel (D.C. Bar#D00473)
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, Washington 98101
Tel: 206-516-3880
sseigel@susmangodfrey.com

Stephen Shackelford, Jr. (D.C. Bar #NY0443)
Beatrice Franklin (Admitted *pro hac vice\*)*
Jillian Hewitt (Admitted *pro hac vice)*
SUSMAN GODFREY L.L.P.
One Manhattan West, 50th Floor
New York, New York 10001
Tel.: 212-336-8330
sshackelford@susmangodfrey.com
bfranklin@susmangodfrey.com
jhewitt@susmangodfrey.com

Neal Manne (D.C. Bar #357012)
Barry Barnett**
Harry Susman (Admitted *pro hac vice)*
Justin A. Nelson (D.C. Bar#490347)
SUSMAN GODFREY L.L.P.

1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel.: 713-651-9366
nmanne@susmangodfrey.com
bbarnett@susmangodfrey.com
hsusman@susmangodfrey.com
jnelson@susmangodfrey.com

Davida Brook (D.C. Bar No. CA00117)
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Tel.: 310-789-3100
dbrook@susmangodfrey.com

Jordan Connors (Admitted *pro hac vice)*
Katherine Peaslee (Admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
401 Union Street, Suite 3000
Seattle, Washington 98101
Tel: 206-516-3880
jconnors@susmangodfrey.com
kpeaslee@susmangodfrey.com

*admitted *pro hac vice* in the underlying litigation
***pro hac vice* forthcoming

*Attorneys for American Bar Association*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 11, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all registered participants.

/s/Stephen Shackelford, Jr.
Stephen Shackelford, Jr.

22